# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

THE STATE OF MISSOURI FOR THE )
USE AND BENEFIT OF MWE )
SERVICES, INC, d/b/a MIDWEST )
DEMOLITION COMPANY )
INC. d/b/a MIDWEST DEMOLITION )
COMPANY, )
 )
    Plaintiff, )
 )
  v. )  Case No. 07-4217-CV-C-NKL
 )
SIRCAL-KOZENY-WAGNER, JV, et al., )
 )
    Defendants. )

## ORDER

Plaintiff's[1] Second Amended Complaint alleges claims for breach of contract under Count I, quantum meruit under Count II, breach of bond under Count III, violation of Section 34.057 of the Revised Statutes of Missouri – Missouri's Prompt Payment Act – under Count IV, fraud under Count V, and a claim for "bad faith denial as to sureties" under Count VI against Defendants Sircal-Kozeny-Wagner, JV[2] ("SKW"), Continental Casualty, Inc. ("Continental") and Travelers Casualty and Surety Company of America ("Travelers"). This

---

[1]John Zapata is the assignee of MWE Services, Inc., the original Plaintiff in this case. Mr. Zapata is proceeding *pro se*. For the sake of simplicity, the Court will refer to Mr. Zapata as "Plaintiff." On May 13, 2008, this Court granted Plaintiff's request to amend the complaint because MWE Services, Inc., had "legally and properly assigned" its claim to John Zapata. [Doc. # 50].

[2]Sircal Contracting Inc., and Kozeny-Wagner, Inc., Missouri corporations, are joint venturers in a joint venture known as "Sircal-Kozeny-Wagner, JV."

1

Court dismissed Plaintiff's claim for fraud under Count V on July 3, 2008 [Doc. # 58].

Pending before the Court are Defendants' Motion for Summary Judgment [Doc. # 79], and

two related motions – Plaintiff's Motion to Strike [Doc. # 97] and Plaintiff's Motion for

Leave to File Additional Evidence [Doc. # 99]. For the reasons stated herein, Defendants'

Motion for summary judgment is granted, Plaintiff's motion to strike is denied, and

Plaintiff's motion for leave to file additional evidence is granted.

## I.      Undisputed Facts[3]

Sometime before February 2, 2006, SKW entered into a contract (the "Prime

Contract") with the Curators of the University of Missouri ("University" or "the University

of Missouri") to perform construction work on the Donald W. Reynolds Journalism Institute

(the "Project"). On or about February 2, 2006, SKW entered into a contract (the

"Subcontract") with MWE Services, Inc. ("MWE"), a Nebraska corporation, wherein MWE

agreed to perform certain demolition work on the Project for a lump sum price of

$307,264.00.

### A.      Terms of the Subcontract

Section 5 of the Subcontract contains several provisions regarding payment relevant

to the dispute between the parties. Paragraph 5.2, regarding progress payments, states, in

relevant part:

---

[3] For purposes of this order, facts are undisputed where they have been agreed to
by the parties or where a fact was not specifically disputed by a party. Under Local Rule
56.1, all statements of undisputed material fact set out in a motion for summary judgment
not specifically controverted by the non-movant are deemed admitted.

2

> If Subcontractor shall fulfill this Subcontract to the satisfaction of Contractor then to the extent that Owner pays Contractor, Contractor agrees to pay Subcontractor . . . subject to additions and deductions as hereinafter provided. Within ten days after the Contractor has received payment from Owner, Contractor shall pay to Subcontractor the amount which the estimate of Contractor shows Subcontractor has earned during the period covered by such estimate for work performed by Subcontractor under provisions of this Subcontract and for which Contractor has received payment from Owner, provided however, that Contractor will reduce each payment to Subcontractor by the same retention percentage as the Contractor's payment from Owner is reduced and will retain such amount.

Paragraph 5.4 states that SKW may withhold payment to MWE "on account of . . . [any] claims or liens, or any notice thereof, whether true or spurious, . . . [and] any breach [by MWE] of any provision or obligation of [the] Subcontract." The Subcontract allows for amounts to be retained from progress payments. Such retainage becomes payable under paragraph 5.6 of the Subcontract "after final completion of the work by [MWE], acceptance thereof by [the University of Missouri] and after receipt by [SKW] of its final payment from [the University of Missouri] for th[e] Subcontract," and such payment must be made within ten days after becoming payable. With respect to delay payments, paragraph 5.8 of the Subcontract provides that:

> [n]o payment of any kind, for compensation, or for damages, or otherwise, shall be made to [MWE] because of any delay even though [MWE]'s extension of time request be granted, unless [the University of Missouri] is obligated to pay [SKW] compensation of damages because of such delay, and then, as and when the [University of Missouri] pays such compensation or damages to [SKW]. [MWE] shall receive that share of such compensation or damages which can be agreed to or proven to have been directly attributable to such delay.

Finally, paragraph 5.10 of the Subcontract provides that:

[MWE] agrees that [SKW], and its bonding company where applicable, shall have no obligation whatsoever to pay [MWE] for any work performed under this Subcontract until and unless [SKW] has been paid for such work by [the University of Missouri], which payment shall be an express condition precedent to any obligation of [SKW] to [MWE] to pay for any work, including changes and extra work performed hereunder. Not withstanding and without waiver of the foregoing and any other provisions of this Subcontract, [SKW] may, at its discretion, pay any part of the Subcontract price at an earlier time than otherwise specified herein.

## B.    The Bond Agreement

As part of the Prime Contract, SKW posted a payment bond issued to the Curators for the University of Missouri. Continental and Travelers (collectively, "Sureties") are sureties for that bond. On December 12, 2005, SKW entered into a "Construction Contract - Labor and Material Payment Bond" [the "Bond Agreement"] with the Sureties.  Pursuant to the Bond Agreement, the Sureties agreed that:

if [SKW] shall faithfully perform and fulfill all the covenants, agreements, terms, conditions, requirements or undertakings of [the Contract] during the original term of said Contract and any extensions thereof that may be granted by the [University of Missouri], with or without notice to the Suret[ies] and during the life of any guaranty required under the Contract; and shall also faithfully perform and fulfill all undertakings, covenants, terms, conditions and agreements of any and all duly authorized modifications of said Contract that may hereafter be made with or without notice to the Suret[ies], then, this obligation shall be void and of no effect, but it is expressly understood that if [SKW] should make default in or should fail to strictly, faithfully and efficiently do, perform and comply with any or more of the covenants, agreements, terms, conditions, requirements or undertakings, as specified in or by the terms of said Contract, and within the time therein named, then this obligation shall be valid and binding upon each of the parties hereto and this bond shall remain in full force and effect.

## C.    Performance under the Subcontract

During construction, the University discovered that mortar in one of the buildings had

4

deteriorated, and informed SKW that renovation of that building would have to be halted while the mortar problem was addressed. The University asked SKW to request subcontractors to submit claims to SKW for any alleged costs attributable to this delay so that SKW could forward such claims on to the University. MWE submitted such a claim, but the University denied it, citing a lack of sufficient back-up for the claim.[4] MWE was never paid for any delay damages from SKW. As of the date of the filing of the Second Amended Complaint, SKW had paid MWE $235,868.00 of the $307,264.00 Subcontract amount.

## II. Defendants' Motion for Summary Judgment [Doc. # 79]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct.

---

[4]While Plaintiff disputes that this was the "real" reason the claim was denied by the University, Plaintiff does not dispute that this was the University's stated reason for denying MWE's delay claim. *See* Defs.' Sugg. in Supp. ¶ 18; Pl.'s Sugg. in Opp. 3–4.

1348, 89 L. Ed. 2d 538 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

### A.  Count I - Breach of Contract Claim

In Count I of his Complaint, Plaintiff alleges that SKW has breached the Subcontract with MWE. Plaintiff alleges SKW is in breach of its obligation to pay MWE $ 122,356 in delay damages, and that SKW has failed to pay $71,396 to MWE that it owes MWE under the Subcontract. Plaintiff alleges $193,752 total in damages. Defendants move for summary judgment as to Count I, arguing that under the unambiguous terms of the Subcontract, all the amounts Plaintiff alleges are due MWE are either not yet due because the University of Missouri has not yet paid SKW, and alternatively that SKW is not obligated to pay to MWE certain of these amounts because SKW has received notice of outstanding claims against MWE.

### 1.  Payment for Delay Damages

Paragraph 5.8 of the Subcontract, entitled "Payments for Delay," states that "[n]o payment of any kind . . . shall be made to [MWE] because of any delay . . . unless [the University of Missouri] is obligated to pay [SKW] compensation of damages because of such delay, and then, as and when the [University] pays such compensation or damages to [SKW]." Pl.'s Second Am. Compl. Exhibit B. The paragraph goes on to state that MWE is

6

entitled to a share of that compensation of damages received by SKW from the University "which can be agreed to or proven to have been directly attributable to such delay." *Id.*

Under Missouri law, contractual provisions limiting liability for damages are enforceable "provided [they are] not ambiguous, unconscionable, or void as against public policy." *Roy A. Elam Masonry, Inc. v. Fru-Con Construction Corp.*, 922 S.W.2d 783, 789 (Mo. Ct. App. 1996). In the *Roy A. Elam* case the Missouri Court of Appeals interpreted a contractual provision in a contract between a subcontractor and a contractor which was nearly identical to paragraph 5.8. *See id.* at 785–786. That provision – Article 3.C. of the Subcontract – stated in part:

> Should Subcontractor be delayed by any act or omission of Contractor, Engineer or Owner, or by any other cause beyond Subcontractor's control and if the cause of delay is not due to any act or omission of Subcontractor, Subcontractor shall be entitled to request a reasonable extension of time for completion of the Subcontract work . . . . *No payment of any kind, for compensation, or for damages, or otherwise, shall be made to Subcontractor because of any such delay even though Subcontractor's extension of time request be granted, unless Owner is obligated to pay Contractor compensation or damages because of such delay, and then, as and when Owner pays such compensation or damages to Contractor, Subcontractor shall receive that share of such compensation or damages which can be agreed to or proven to have been directly attributable to such delay.*

*Id.* (emphasis added). The Court of Appeals held this provision was unambiguous and was neither unconscionable nor void as against public policy. *Id.* at 790–791. The Court in *Roy A. Elam* found that where the Owner had not paid the Contractor for delay damages, "[u]nder the unambiguous language of Article 3.C, [the Subcontractor] was precluded from seeking [delay] damages," and that the Subcontractor's "action was, at best, premature." *Id.* at 788.

7

Plaintiff does not argue that paragraph 5.8 is unconscionable or that it is void as against public policy, and the Missouri Court of Appeals has found a nearly identical provision unambiguous. By its plain language, paragraph 5.8 of the Subcontract provides that MWE is only entitled to delay damages: (1) for which the University of Missouri is obligated to pay SKW; (2) as and when those damages are paid to SKW by the University; and (3) in an amount that "can be agreed to or proven to have been directly attributable to such delay." Pl.'s Compl. Exhibit B.

In its motion for summary judgment on Plaintiff's claim for delay damages in Count I, SKW argues that it has not been paid by the University of Missouri for the delay damages Plaintiff seeks, and MWE is therefore not entitled to delay damages.

In support of its claim that it has not been paid for delay damages related to MWE, SKW offers the affidavit testimony of David Stokes, who was the Project Manager for SKW for the Project, and Matt Thornton, a University of Missouri official responsible for reviewing the delay damage requests made by subcontractors through SKW on the Project. *See* Stokes Aff. ¶ 2; Thornton Aff. ¶ 3. Both Mr. Stokes and Mr. Thornton stated that SKW had not been paid by the University in connection with MWE's delay claim, and that the stated reason for the University's denial of this delay claim was a lack of sufficient backup for the claim. *See* Stokes Aff. ¶¶ 15–17; Thornton Aff. ¶¶ 4, 8.

In response Plaintiff first argues, based upon his own interpretation of Paragraph 5.8, that SKW is obligated to pay MWE a share of *any* amount SKW received from the University for delay damages, whether or not the amounts received were for delays caused

to MWE. *See* Pl.'s Sugg. in Supp. at 14–15. Paragraph 5.8 clearly refers to delays suffered by individual subcontractors, and states that subcontractors may not recover from SKW unless the University of Missouri is obligated to pay SKW for the delay caused to the subcontractor, and then may only recover such damages as and when the University pays them to SKW. This section would make no sense if, as Plaintiff suggests, SKW were obligated to distribute any delay damages it received from the University among all its subcontractors on the Project, regardless of whether they had been injured by the particular delay in question.

Next, Plaintiff argues in the alternative that even if SKW has not been paid by the University of Missouri for MWE's delay damages, SKW is still liable to MWE for such damages either because SKW was the cause of the delay damages or because SKW failed to forward to the University MWE's revised delay claims. Plaintiff's first argument is easily disposed of – under paragraph 5.8, SKW is only liable for MWE's delay damages to the extent the *University of Missouri* is obligated to pay SKW for such damages. Under Missouri law, contractual provisions limiting liability for damages are enforceable so long as they are not ambiguous, unconscionable, or void as against public policy. *See Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, 59 S.W.3d 505, 510 (Mo. banc 2001); *Roy A. Elam*, 922 S.W.2d at 789-790 (citing *World Enterps. Inc. v. Midcoast Aviation*, 713 S.W.2d 606, 608-611 (Mo. Ct. App. 1986); *Liberty Fin. Mgmt. v. Beneficial Data*, 670 S.W.2d 40, 46–50 (Mo. Ct. App. 1984)). As stated above, the Missouri Court of Appeals has found a contractual provision nearly identical to Paragraph 5.8 was neither ambiguous, unconscionable, nor void

9

as against public policy. *Roy A. Elam*, 922 S.W.2d at 788.

Plaintiff finally argues that by failing to submit its revised delay claims to the University SKW violated the covenant of good faith and fair dealing implied in every Missouri contract. Plaintiff argues that SKW cannot defend itself based upon the failure of a condition precedent it prevented to relieve itself of its obligation to pay MWE. Pl.'s Sugg. in Opp. at 15–16. To prove a breach of the covenant of good faith and fair dealing, there must be substantial evidence of bad faith. *See Howard v. Columbia Public School Dist.*, 363 F.3d 797, 805 (8th Cir. 2004). The breaching party's decision or action must be "made in bad faith or [be] arbitrary and capricious so as to amount to an abuse of discretion." *Missouri Consol. Health Care Plan v. Community Health Plan*, 81 S.W.3d 34, 48 (Mo. Ct. App. 2002). Further, in any action for breach of contract, the plaintiff must have sustained damages which resulted from the defendant's alleged breach. *See Brickey v. Concerned Care of Midwest, Inc.*, 988 S.W.2d 592, 594 (Mo. Ct. App. 1999); *Muir v. Ruder*, 945 S.W.2d 33, 36 (Mo. Ct. App. 1997).

Plaintiff's only evidence consists of statements by University officials that the University would entertain revised delay claims submitted through SKW from MWE which included all necessary supporting documentation. Plaintiff provides no evidence at all that SKW acted in bad faith in deciding whether or not to submit MWE's revised delay claims. Furthermore, Defendants have provided the affidavit of Matt Thornton – the University official responsible for reviewing subcontractors' delay damage requests – who stated that MWE's subsequent delay claims lacked "sufficient justification" and that those claims would

10

be denied by the University just as MWE's initial delay claim was. Thornton Aff. ¶ 7. Thus, even if SKW did fail to pass along MWE's revised delay claims to the University, Plaintiff has produced no evidence that SKW's failure to send the documentation to the University was a result of bad faith on the part of SKW and, more importantly, Plaintiff has offered no evidence that MWE suffered damages as a result of such failure.

Plaintiff's claim for delay damages fails as a matter of law. Paragraph 5.8 of the Subcontract is neither ambiguous, unconscionable, nor contrary to public policy. Under this provision of the Subcontract, SKW is only required to pay delay damages to MWE when such payments are made to SKW by the University. There is no evidence that the University has paid anything to SKW for MWE's delay damages. Furthermore, there is simply no evidence that SKW acted in bad faith by refusing to forward MWE's revised delay damages requests to the University, and there is no evidence that – even assuming SKW did act in bad faith – such a breach was the cause of any damages to MWE.[5] Summary judgment is therefore appropriate as to Plaintiff's claim for delay damages under Count I.

---

[5]Another of Plaintiff's arguments as to why summary judgment is inappropriate as to his claim for delay damages is that Section 7 of the Subcontract, relating to "Changes in the Work," is applicable to this claim and was breached by SKW. *See* Pl.'s Compl. Exhibit B. The provision in Section 7 of the Subcontract cited by Plaintiff – paragraph 7.3 – does not apply to delay damages; it merely states that MWE is not entitled to payment for "any change work performed except to the extent that [SKW] authorized the work in writing." *Id.* This paragraph does not provide that MWE can recover the amounts Plaintiff alleges it should have been paid by SKW; it merely provides that MWE *cannot* receive payment from SKW for change work performed where SKW has not authorized that work in writing. Furthermore, to the extent this paragraph is applicable and to the extent Plaintiff is claiming that MWE is owed $122,356, not in delay damages but in payment for work performed, paragraphs 5.2 and 5.10 of the Subcontract provide that SKW is not obligated to pay MWE for such amounts until the University has paid SKW. *See* Section II.A.2. *infra*.

11

## 2.    Unpaid Subcontract Balance

Plaintiff also alleges in Count I that MWE is owed $71,396 for work completed by MWE under the Subcontract.  In their motion, Defendants argue that they are entitled to summary judgment as to this portion of Count I because amounts the University has not yet paid or has refused to pay to SKW in relation to MWE's work, when added to amounts that SKW has validly withheld from MWE, exceed the $71,396 Plaintiff claims MWE is due under the Subcontract.

The Subcontract contains several provisions regarding the timing of payments from SKW to MWE.  Under paragraph 5.2 of the Subcontract SKW agrees to pay MWE progress payments on work performed under the Subcontract during a particular time period "subject to additions and deductions" provided for in the Subcontract, "and for which [SKW] has received payment from [the University.]" Paragraph 5.6 of the Subcontract provides that amounts that SKW retains from progress payments are to be paid to MWE within ten days "after final completion of the work by [MWE], acceptance thereof by [the University] and after receipt by [SKW] of its final payment from [the University] for th[e] Subcontract." Paragraph 5.10 of the Subcontract states that SKW has "no obligation whatsoever to pay [MWE] for any work performed under th[e] Subcontract until and unless [SKW] has been paid for such work by [the University], which payment shall be an express condition precedent to any obligation of [SKW] to pay for any work" performed by MWE.  Finally, paragraph 5.4 of the Subcontract allows SKW to withhold payments that would otherwise be due to MWE  "on account of . . . [any] claims or liens, or any notice thereof, whether true

12

or spurious[.]"

### a.      Amounts Not Paid to SKW by the University

Defendants present evidence that SKW does not owe MWE the $71,396 Plaintiff claims MWE is due under Count I.  In his affidavit, David Stokes, SKW's Project Manager, stated that SKW had not received $12,971.93 from the University because that amount was held by the University as retention in connection with MWE work under the Subcontract. Stokes Aff. ¶ 26.  Defendants also presented evidence that SKW has not been paid at least $27,522.25 by the University as a result of the University's prevailing wage audit of MWE.[6] *See* Thornton Aff. ¶ 9–10 and Ex. 5; Stokes Aff. ¶¶ 18–25.  Defendants argue that because SKW has not been paid these amounts by the University, SKW has no obligation to pay at least these amounts – a total of $40,494.18 – to MWE under paragraphs 5.2 and 5.10 of the

---

[6] In his affidavit, David Stokes states that the University's audit determined that MWE had underpaid its workers in the amount of $25,123.52, and that the University had assessed a penalty of $16,500 based on this underpayment, for a total of $41,623.52.  Stokes Aff. ¶¶ 19 – 20 & Ex. B.  Stokes also stated that, without receiving payment from the University, SKW provided a joint check in the amount of $18,104.44 to MWE and a local union "based upon MWE's recognition that it owed at least this amount to its workers in connection with the prevailing wage audit." *Id.* at ¶¶ 21–22.  Based upon back-up for this joint check provided by MWE, the University determined that the $18,104.44 amount included $4,003.17 in benefits that was not included in the University's audit.  *Id.* at ¶ 23.  As a result, only $14,101.27 was applied to the $41,623.52 amount found in the University's audit, leaving $27,522.25.  *See* Defs.' Sugg. in Supp. 15; Thornton Aff. ¶¶ 9-11.  Mr Stokes stated in his affidavit that SKW has been paid nothing in connection with the University's prevailing wage audit, including the $14,101.27 referenced above; however, Defendants have assumed for summary judgment that SKW has been paid this amount.  Defs.' Sugg. in Supp. 15.  In his affidavit, Mr. Thornton references a deductive change order issued to SKW by the University reducing the contract price by $27,522.25 and states that the University will not pay this amount.  Thornton Aff. ¶¶ 9-10 and Ex. 5.  In Defendants' Reply Suggestions, Defendants incorrectly state that this amount is $27,522.50, and this error is carried through the rest of Defendants' calculations.  While this twenty five cent difference is not outcome-determinative, for the purposes of this order the Court will use the $27,522.25 figure.

13

Subcontract, and that Plaintiff's potential Subcontract balance claim therefore falls to $30,901.82.

In response to Defendants' evidence regarding amounts not paid to SKW by the University, Plaintiff makes two arguments. First, Plaintiff argues that to the extent the University has not paid SKW as a result of the University's prevailing wage audit, SKW's failure to specifically incorporate Article 13 of the Prime Contract – which includes the prevailing wage requirement – into the Subcontract *caused* MWE's failure to pay its workers the prevailing wage, and SKW's failure to incorporate those provisions cannot be used as a defense by SKW. This argument fails because section 2.1 of the Subcontract specifically incorporates *all* provisions of the Prime Contract, which would include Article 13.[7] "In Missouri, matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in *haec verba*." *Livers Bronze, Inc. v. Turner Constr. Co.*, 264 S.W.3d 638, 643 (Mo. Ct. App. 2008) (quoting *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 n.5 (Mo. banc. 2003)). Plaintiff's argument that SKW is responsible for MWE's failure to pay the prevailing wage to its workers because SKW did not *specifically* incorporate Article 13 fails as a matter of law.

Next, Plaintiff argues that SKW has in fact been paid enough to cover all amounts due

---

[7]Specifically, paragraph 2.1.2 of the Subcontract states: "[MWE] acknowledges that all of the Contract Documents [including under paragraph 2.1.1. all portions of the Prime Contract] are on file in [SKW's] office and [MWE] represents that it has been given the opportunity to examine all of the Contract Documents and is familiar with the terms and conditions thereof, and that it and its subcontractors and suppliers will be bound by any and all parts of said contract documents, insofar as they relate to the work undertaken herein."

14

to MWE. In support of this argument, Plaintiff submits his own analysis of two SKW documents – SKW's Pay Applications ## 29 and 32. *See* Pl.'s Sugg. in Opp. Ex. 1, Pl.'s Mot. to Submit Add'l Evidence, Ex. A. He claims that MWE was the only subcontractor to do work on certain of the line items listed in those pay applications, and because when added up, those line items show that SKW has been paid enough to cover the entire Subcontract amount ($307,264) plus amounts SKW holds in retention, SKW's claim that it has not been paid by the University must be false. Plaintiff states that David Stokes admitted that SKW had "received full payment" from the University for the demolition work done on the Project. Pl.'s Sugg. in Opp. 18-19.[8] In further support of his theory, Plaintiff cites the deposition testimony of David Bowman, a former University of Missouri employee who served as Senior Project Engineer on the Project prior to the time of the payment applications cited by Plaintiff. Plaintiff cites to the portion of Mr. Bowman's deposition for the proposition that

---

[8]Plaintiff also cites the deposition testimony of David Bowman, a former University of Missouri employee who served as Senior Project Engineer on the Project prior to the time of the payment applications cited by Plaintiff. Plaintiff cites to the portion of Mr. Bowman's deposition for the proposition that the "schedule of value . . . identified on [SKW's pay application # 29], was only a representation of the work performed on the project only and that any change orders or back charges would ha[ve] been reflected on the Change Order segment of [the pay application]." Pl.'s Sugg. in Opp. 9. However, as Defendants point out, Mr. Bowman also testified during his deposition that he was unfamiliar with payment application # 29 and that he was not construction manager at the time that payment application was submitted. Bowman Depo. 14:6–8; 17:3–11. Furthermore, nowhere in Mr. Bowman's deposition does he state that he is aware of how the line items in the pay application were broken down; it therefore appears that Mr. Bowman had no personal knowledge of whether or not SKW had received any amounts from the University related to MWE's work on the Subcontract during the time period covered by payment application # 29, and his testimony fails to rebut Mr. Stokes' statement in his deposition that (1) he was the one who broke the payment application down into line items and (2) that the line items referenced by Plaintiff contain amounts other than amounts received by SKW from the University in connection to MWE's work on the Subcontract.

the "schedule of value . . . identified on [SKW's pay application # 29], was only a representation of the work performed on the project only and that any change orders or back charges would ha[ve] been reflected on the Change Order segment of [the pay application]." Pl.'s Sugg. in Opp. 9.

As Defendants argue, Plaintiff's arguments regarding the SKW pay applications fail to rebut Defendants' evidence that SKW has not been paid at least $40,494.18 by the University in relation to MWE. First, in the deposition testimony of David Stokes cited by Plaintiff, Stokes – who broke the pay application down into line items – states that the line items referred to by Plaintiff include amounts received by SKW that were unrelated to MWE's work under the Subcontract, and does not agree, as Plaintiff implies, that SKW has been paid in full by the University for MWE's work on the Subcontract. *See* Stokes Depo. 115 and 135. Second, Mr. Bowman's testimony fails to rebut the testimony of Thornton and Stokes cited above. Mr. Bowman testified during his deposition that he was unfamiliar with payment application # 29 and that he was not construction manager at the time that payment application was submitted. *See* Bowman Depo. 14:6–8; 17:3–11.

Furthermore, nowhere in Mr. Bowman's deposition does he state that he is aware of how the line items in the pay application were broken down. Mr. Bowman has no personal knowledge of whether or not SKW had received any amounts from the University related to MWE's work on the Subcontract during the time period covered by payment application # 29; his testimony cannot, therefore, rebut Mr. Stokes' statement in his deposition that (1) he was the person who broke the payment applications down into line items and (2) that the line

16

items referenced by Plaintiff contain amounts other than amounts received by SKW from the University in connection to MWE's work on the Subcontract.

Finally, the bulk of Plaintiff's "evidence" to rebut the testimony of David Stokes and Matt Thornton that SKW has not been paid at least $40,494.18 by the University consists of the Plaintiff's own calculations based upon the pay applications submitted to the University by SKW and his own assertions that the particular line items he references only include amounts related to MWE's Subcontract work. "A properly supported motion for summary judgment is not defeated by self-serving affidavits[;] . . . a "plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Bacon v. Hennepin County Medical Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) (internal citations omitted). While Plaintiff asserts that the pay applications show that SKW has been paid enough to pay MWE, Plaintiff's mere allegations are insufficient to rebut Defendants' evidence that the line items in those payment applications refer to amounts other than amounts related to MWE's work under the Subcontract and Defendants' evidence that the University has not paid SKW at least $40,494.18 in connection with MWE's work on the Subcontract. Therefore, Defendants are entitled to summary judgment on at least this amount of the portion of Plaintiff's breach of contract claim related to unpaid Subcontract amounts.

**b.  Amounts SKW is Entitled to Withhold.**

Next, Defendants argue that because SKW was on notice of claims against MWE in excess of this amount, SKW is under no obligation to pay the remaining $30,901.82 to MWE Plaintiff claims is due under Count I. As set out above, paragraph 5.4 of the Subcontract

17

states that: "[p]ayments which would otherwise be due [MWE] may be withheld in whole or in part by [SKW] on account of . . . claims or liens, or any notice thereof, whether true or spurious[.]"

Defendants present evidence of several claims against MWE of which SKW had notice and argue that under paragraph 5.4 of the Subcontract SKW was entitled to withhold payment to MWE in the amount of those claims. First, in his affidavit, Mr. Stokes stated that SKW had received notice from a local union that MWE owed its workers a total of $12,043.73 for "waiting time," in connection with the Project. Stokes Aff. ¶ 27. Second, Defendants presented evidence that SKW was served with two garnishments from the Missouri Department of Labor and Industrial Relations Division of Employment Security against MWE: one in 2007 in the amount of $58,384.02, and another in August 2008 in the amount of $40,876.90. Defs.' Sugg. in Supp. Ex 8. Defendants argue that because the amount of these claims exceeds $30,901.82, Plaintiff's entire claim for breach of contract based upon the Subcontract balance fails as a matter of law.

In his affidavit and in a supplemental filing made after Defendants' Reply Suggestions were filed, Plaintiff states that the "waiting time" claim has been resolved and that the State of Missouri had returned some amounts it had previously garnished from MWE's checking account. *See* Pl.'s Sugg. in Opp. 23–25; Pl.'s Mot. to Submit Add'l Evidence. However, the amounts returned were returned before August 5, 2008; the 2008 Garnishment in the amount of $40,876.90, which expires on February 23, 2009, was only issued August 25, 2008. *See* Pl.'s Sugg. in Opp. Ex. 12; Defs.' Sugg. in Supp. Ex. 8, Ex. B. Plaintiff fails to rebut

18

Defendants' evidence that SKW is on notice of a claim by the State of Missouri against MWE in the amount of $40,876.90.[9]   Plaintiff has provided no evidence at  all to rebut Defendants' evidence of the 2008 Garnishment.  Because this $40,876.90 is in excess of the $30,901.82 remaining after deducting amounts not paid to SKW by the University due to the prevailing wage audit and the amounts withheld by the University in retention, Defendants are entitled to summary judgment on Plaintiff's claim for breach of contract under Count I.

### B.      Count II - Quantum Meruit

Defendants are also entitled to summary judgment on Plaintiff's quantum meruit claim in Count II.  It is undisputed that the parties' rights are governed by a written, enforceable contract - the Subcontract between SKW and MWE.  No cause of action for quantum meruit lies where there is an enforceable contract governing the rights and obligations of the parties; "a plaintiff may not maintain an action in *quantum meruit* where the plaintiff's relationship with the defendant is governed by an existing contract."  *Burrus v. HBE Corp.*, 211 S.W.3d 613, 619 (Mo. Ct. App. 2006).

### C.      Count IV - Violation of Prompt Payment Act

Under Section 34.057 of the Revised Statutes of Missouri – Missouri's Prompt Payment Act (the "Act") –  a contractor must make payment to its subcontractors within

---

[9]The Court need not address Plaintiff's argument that paragraph 5.4 of the Subcontract is unconscionable.  Plaintiff claims that the provision in paragraph 5.4 allowing SKW to withhold payment for "spurious" claims against MWE makes paragraph 5.4 unconscionable.  There is no evidence that the 2008 Garnishment in the amount of $40,876.90 is a "spurious" claim; to the contrary, this claim is based upon a judgment against MWE.  Therefore, the provision of paragraph 5.4 allowing SKW to withhold payment to MWE because of "spurious" claims is not at issue here.

19

fifteen days of receiving payment from an owner on a public construction contract. Mo. Rev. Stat. § 34.057.1(7). If the contractor fails to pay within this amount of time without reasonable cause, aggrieved subcontractors are entitled to both the payments due them as well as interest in the amount of one and a half percent per month from the expiration of the fifteen day deadline. *Id.* When a public owner pays a contractor less than the full amount due under the contract, the Act requires the contractor to pay each of his subcontractors on a pro rata basis within fifteen days of receiving such partial payment. Mo. Rev. Stat. § 34.057.1(6). However, where the public owner pays a contractor less than the full amount due the contractor because of issues relating to a particular subcontractor's work, the contractor is not obligated to pay that subcontractor for that portion of work rejected by the public owner. *Id.* Subsection 2 of the Act allows a contractor to withhold applications for payment to the public owner for a number of reasons, including "third party claims filed or reasonable evidence that a claim will be filed[.]" Mo. Rev. Stat. § 34.057.2.

Plaintiff's claim under the Prompt Payment Act fails for the same reasons Plaintiff's breach of contract claim fails. As set out above, based upon the evidence in the record, SKW has not been paid by the University for any of the $122,356 in delay damages claimed by MWE, or for at least $30,901.82 in connection with MWE's work on the Subcontract. Furthermore, SKW is on notice of at least one claim by a third party – a claim by the State of Missouri in the amount of $40,876.90. SKW is not liable under the Act for its failure to pay MWE for the $122,356 in delay damages or for at least $40,494.18 of the $71,396 Subcontract balance claimed by Plaintiff because there is no evidence the University of

20

Missouri has paid these amounts to SKW, and therefore there can be no evidence that SKW has failed to pay MWE these amounts within 15 days of receiving payment from the University. Furthermore, under subsection 2 of the Act, SKW is allowed to withhold at least $40,876.90 from MWE in relation to the State of Missouri's 2008 garnishment, an amount in excess of the $30,901.82 remaining on Plaintiff's claim after deducting the $40.876.90 referenced above.

### D. Counts III and VI - Plaintiff's Bond Claims

Summary judgment is appropriate as to Defendant SKW on Counts III and VI – Plaintiff's claims related to the Bond Agreement, as there is no evidence that SKW acted as a surety on any obligation. Furthermore as the Court has determined that SKW has not breached its contract with MWE, the Defendant Sureties cannot be liable under the Bond Agreement, as under its terms the Sureties are not liable for any obligation of SKW unless SKW has breached a contractual obligation. Therefore, summary judgment is also appropriate as to the Defendant Sureties with respect to Counts III and VI.

## III. Plaintiff's Motions

### A. Plaintiff's Motion to Strike [Doc. # 97]

In his Motion to Strike, Plaintiff argues that the Court should ignore "new evidence" submitted in Defendants' Reply Suggestions, including the affidavit testimony of Matt Thornton and Exhibit 5. Alternatively, Plaintiff requests that the Court consider additional arguments set forth in Plaintiff's Motion to Strike. In substance, Plaintiff's motion appears to be a surreply to Defendant's Motion for Summary Judgment filed without leave of the

Case 2:07-cv-04217-NKL   Document 104   Filed 02/23/09   Page 21 of 23

Court. While Plaintiff did not have leave of this Court to file such a surreply, the Court has nevertheless considered Plaintiff's additional argument. The Court will not strike either Mr. Thornton's affidavit. Mr. Thornton's affidavit was apparently taken in response to a new claim asserted in Plaintiff's Suggestions in Opposition; that SKW had breached its contract with MWE with respect to MWE's claim for delay damages in that it had violated a covenant of good faith and fair dealing; Defendants obtained Mr. Thornton's affidavit in part as evidence that Plaintiff had no viable breach of contract claim for delay damages based upon this new theory. As to the change order letter dated November 12, 2008, attached to Defendants' Reply Suggestions, the Plaintiff had and took the opportunity to respond to this evidence in filing his Motion to Strike and the argument accompanying it. Plaintiff's Motion to Strike is denied.

**B.   Plaintiff's Motion to File Additional Evidence [Doc. # 99]**

Plaintiff's Motion to File Additional Evidence is granted. The additional evidence submitted by Plaintiff was considered by the Court in ruling on Defendants' Motion for Summary Judgment.

**IV.   Conclusion**

Accordingly, it is hereby

ORDERED that Defendants' Motion for Summary Judgment [Doc. # 79] is GRANTED; it is further

ORDERED that Plaintiff's Motion to Strike [Doc. # 97] is DENIED and Plaintiff's Motion to File Additional Evidence [Doc. # 99] is GRANTED.

22

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  February 23, 2009
Jefferson City, Missouri